STROOCK & STROOCK & LAVAN LLP
STEPHEN J. NEWMAN (State Bar No. 181570)
DUSTIN A. LINDEN (State Bar No. 280524)
GAGANJYOT K. SANDHU (State Bar No. 327379)
2029 Century Park East, 18th Floor
Los Angeles, CA 90067-3086
Telephone:   310.556.5800
Facsimile:   310.556.5959
Email:       *lacalendar@stroock.com*

DISABILITY RIGHTS LEGAL CENTER
CHRISTOPHER H. KNAUF (State Bar No. 185180)
ALEXANDRA M. ROBERTSON (State Bar No. 298637)
BRENDAN M. HAMME (State Bar No. 285293)
1541 Wilshire Boulevard, Suite 400
Los Angeles, CA 90017
Telephone:   213.736.1031 x1195
Facsimile:   213.736.1428
Email:       *ck@drlcenter.org*
             *ar@drlcenter.org*
             bh@*drlcenter.org*

Attorneys for Plaintiff
  FRANCISCO SERRANO, on behalf of himself and
  others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO SERRANO, on behalf of himself and others similarly situated,<br><br>             Plaintiff,<br><br>        v.<br><br>FLIXBUS INC.; SCREAMLINE INVESTMENT CORPORATION D/B/A TOURCOACH CHARTER & TOURS; USA COACH SERVICES, INC.; and DOES 1 THROUGH 10, inclusive,<br><br>             Defendants. | Case No. 2:20-cv-04355<br><br>**PUTATIVE CLASS ACTION**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

Plaintiff Francisco Serrano ("Plaintiff" or "Mr. Serrano") brings this action on behalf of himself for damages, and on behalf of himself and others similarly situated ("Class Members")[1] for injunctive relief under Federal Rule of Civil Procedure 23(b)(2), against defendants FlixBus Inc. ("FlixBus"), Screamline Investment Corporation d/b/a TourCoach Charter & Tours ("TourCoach"), USA Coach Services, Inc. ("USA Coach"), and Does 1 through 10, inclusive, (all defendants, collectively, "Defendants"), demanding a trial by jury, and hereby alleges, either based on personal knowledge or upon information and belief, as follows:

## I.   INTRODUCTION

1.       Plaintiff and the Class Members are wheelchair users who have been illegally discriminated against on the basis of their disabilities while traveling or attempting to travel on the transportation services offered to the public by Defendants.

2.       Plaintiff is a person with disabilities who is unable to walk or drive, must use a wheelchair for mobility at all times, and relies on mass transit for his daily transportation needs.  Defendants provide intercity bus services throughout California and the United States.  Customers like Plaintiff and the Class Members use tickets purchased either in person, via the internet or via a mobile application to ride on Defendants' buses.  FlixBus is a major transportation service provider serving more than 200,000 riders per month in the United States.

3.       Federal and California law require that Defendants provide accessible transportation services to their customers with disabilities.  FlixBus, for example, *claims* on its website that it can accommodate the needs of wheelchair users, states that its mission is to provide "green and smart mobility *for everyone*," and promises customers "a stress-free ride . . . with *experienced drivers* that will bring you *safely*

---

[1] Class Members refers to members of the Classes defined below.

NY 78018802

to your destination." (emphasis added). But as Plaintiff's experiences demonstrate, FlixBus and the other Defendants frequently fail to live up to these obligations.

4.     Indeed, on numerous occasions, Plaintiff has been illegally discriminated against while traveling or attempting to travel with FlixBus and the other Defendants between Los Angeles and San Diego because their buses had a broken or malfunctioning wheelchair lift, no lift at all, or no trained personnel to operate a lift. This caused Plaintiff to feel greatly embarrassed, uncomfortable and unsafe on numerous occasions, to be left stranded, to miss important travel engagements with family, and to pay more for alternative travel arrangements when Defendants failed to reasonably accommodate his disability. At each of these times, Defendants effectively excluded Plaintiff from Defendants' transportation services, solely because Plaintiff has a disability and uses a wheelchair.

5.     Based on the number of incidents at issue, Plaintiff is informed, believes, and based thereon alleges, that Defendants have and continue to violate the civil rights of Plaintiff and other Class Members under both federal and California antidiscrimination laws applicable to persons with disabilities, and it is extremely likely that, unless enjoined by this Court, Defendants will continue to do so. Accordingly, Plaintiff brings this class action pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (the "ADA"), California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et. seq. (the "Unruh Act"), and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. (the "UCL") to redress these past and ongoing civil rights violations; to ensure that Plaintiff and the Class Members have full and equal access to Defendants' transportation services; and to correct their advertising that falsely claims to offer their services on an equal basis to passengers with disabilities until Defendants fully comply with applicable laws. The Class Members consist of persons with disabilities, like Plaintiff, who use wheelchairs (or scooters or other similar mobility aids) and experienced similar

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

NY 78018802

1   discriminatory conduct while using or attempting to use Defendants' transportation

2   services.

3         6.     On behalf of himself and the Class Members, Plaintiff seeks injunctive

4   and declaratory relief to, among other things, compel Defendants to adopt policies,

5   procedures, and training to ensure that individuals with disabilities are provided full

6   and equal access to Defendants' transportation services.  Plaintiff also seeks statutory

7   and compensatory damages for himself according to proof.  Plaintiff also seeks

8   reasonable attorneys' fees and costs.

## II.    HISTORY AND PURPOSE OF THE ADA

9

10         7.     It has been nearly 30 years since the ADA was enacted, establishing the

11   most important and comprehensive civil rights law for people with disabilities in

12   American history.  In 2010, Congress amended the ADA, finding that society has

13   continued to segregate and isolate people with disabilities and that such forms of

14   discrimination continue to be a "serious and pervasive social problem."  42 U.S.C. §

15   12101(a)(2).  Therefore, the express purpose of the ADA is to provide "a clear and

16   comprehensive national mandate" for eliminating discrimination against people with

17   disabilities, and "clear, strong, consistent, enforceable standards addressing

18   discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1)-(2).

19         8.     Ensuring that individuals with disabilities have full and equal access to

20   transportation is at the core of the ADA's purpose.  Indeed, Congress specifically

21   identified transportation as one of the "critical areas" of discrimination persisting

22   against such individuals.  42 U.S.C. § 12101(a)(3).  Ending transportation-related

23   discrimination is crucial to achieving the ADA's goals of assuring "equality of

24   opportunity, full participation, independent living, and economic self-sufficiency" for

25   individuals with disabilities.  42 U.S.C. § 12101(a)(7).  Without consistent and

26   reliable access to transportation, people with disabilities are both literally and

27   figuratively left behind.

28

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

-3-

9.      California's Unruh Act has the same purpose and goals as the federal ADA.  For example, the Unruh Act states that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).

10.     As alleged below, Defendants have openly violated, and continue to violate, the longstanding mandates of the ADA and Unruh Act to eliminate disability-based discrimination through a pattern and practice of failing to ensure that passengers with disabilities, like Plaintiff and the Class Members, have full and equal access to their transportation services.

### III.     JURISDICTION AND VENUE

11.     This Court has original federal jurisdiction over this civil rights action pursuant to 28 U.S.C. §§ 1331 and 1343 because it alleges that Defendants violated 42 U.S.C. § 12101, et seq., of the ADA.

12.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under California's Unruh Act and UCL because they arise from the same conduct that forms the basis of Plaintiff's federal ADA claim.  Accordingly, Plaintiff's state law claims are so related to his federal claim that they form the same case or controversy.

13.     This Court has jurisdiction over Plaintiff's claims for injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

14.     This Court has personal jurisdiction over Defendants because they are each corporations operating within California, and each systematically and continuously conduct business in California and/or purposefully direct their business toward California through their transportation services.  Indeed, Defendants have each voluntarily conducted business and/or solicited customers in California for their transportation services, including in this judicial district, and continue to commit the

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

-4-

wrongful acts alleged herein against California residents. Additionally, TourCoach is formed under the laws of California. Thus, Defendants have all purposefully availed themselves of the benefits and protections of California law such that the exercise of jurisdiction over them by this Court will not offend traditional notions of fair play and substantial justice.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because it is where a substantial part of the events giving rise to the claims asserted herein occurred. Each of the bus rides that Plaintiff took or attempted to take using Defendants' transportation services that are at issue in this action originated in, or departed from, Los Angeles, California, which is located in this judicial district. Plaintiff also purchased the tickets for bus rides online from FlixBus while at his home in Los Angeles. Defendants also can be found in, have one or more agents in, and/or transact or have transacted business in Los Angeles.

## IV.   PARTIES

**A.   Plaintiff Francisco Serrano and the Class Members**

16. Mr. Serrano is a natural person and is and was at all relevant times a resident of Los Angeles, California.

17. Plaintiff is an individual with a disability within the meaning of the ADA and the Unruh Act. 42 U.S.C. § 12102(1); Cal. Civ. Code § 54(b)(1); see Cal. Gov. Code §§ 12926, 12926.1. He is a full-time wheelchair user who is unable to walk or drive and, therefore, relies exclusively on mass transit services from providers like Defendants for his daily transportation needs.

18. Plaintiff has used the services of Defendants since August 2018. He frequently takes day trips from his home in Los Angeles to visit family in or around San Diego and prefers to use FlixBus because it is often the least expensive option available and is conveniently located by his home. Mr. Serrano would like to continue using Defendants' services in the future but is dissuaded from doing so until he can be reasonably sure he will receive an accessible ride.

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

-5-

19.     The Class Members reside in and are located throughout California and the United States.  Like Plaintiff, the Class Members are also individuals with disabilities within the meaning of the ADA and Unruh Act, use a wheelchair or other mobility aid, and use (or would like to use) the mass transit services of Defendants for their transportation needs.

**B.     FlixBus**

20.     FlixBus is and was at all relevant times a corporation formed under the laws of Delaware with its principal place of business in Los Angeles, California.

21.     According to its marketing and promotional materials and documents filed with the State of California, FlixBus is a private company primarily engaged in the business of transporting people.  Specifically, it offers or arranges intercity bus services throughout California and the United States.

22.     On its website, FlixBus holds itself out as the "smart choice," and asks riders to "[t]ake advantage of [FlixBus's] affordable prices without compromising the quality or comfort of your ride."  Indeed, FlixBus advertises as the most economical way to travel long-distance in Southern California, with fares considerably cheaper than its competitors.  For example, a roundtrip ticket between Los Angeles and San Diego can be as low as $9.99 from FlixBus, but approximately $20 on Greyhound and $36 on Amtrak.

23.     As a provider of intercity bus transportation services that attracts consumers from different U.S. states, provides the public with general or special transportation services (including charter service) on a regular and continuing basis, and provides bus services that cross state lines, FlixBus owns, leases (or leases to), or operates a public accommodation and is subject to Title III of the ADA, and the regulations promulgated thereunder.  See 42 U.S.C. §§ 12181, 12184.  On information and belief, FlixBus is a large operator of a fixed route, over the road bus ("OTRB") service.  But even if it is deemed  a small operator of a fixed route OTRB service, FlixBus still has violated the law as set forth herein.  Additionally, FlixBus is

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

-6-

a business establishment within the meaning of the Unruh Act.  See Cal. Civ. Code § 51.

## C.      TourCoach and USA Coach

24.      TourCoach is and was at all relevant times a corporation formed under the laws of California with its principal place of business in Commerce, California.

25.      USA Coach is and was at all relevant times a corporation formed under the laws of Nevada with its principal place of business in Las Vegas, Nevada.

26.      As providers of intercity bus transportation services that attract consumers from different states, provide the public with general or special transportation services (including charter service) on a regular and continuing basis, and provide bus services that cross state lines, TourCoach and USA Coach own, lease (or lease to), or operate public accommodations and are subject to Title III of the ADA, and the regulations promulgated thereunder.  See 42 U.S.C. §§ 12181, 12184.  On information and belief, TourCoach and USA Coach are operators of fixed route, over the road bus ("OTRB") services.  But even if they are deemed small operators of fixed route OTRB services, TourCoach and USA Coach still have violated the law as set forth herein.  Additionally, TourCoach and USA Coach are business establishments within the meaning of the Unruh Act.  See Civ. Code § 51.

## D.      Does 1 through 10

27.      Plaintiff is currently unaware of the true names and identities of Does 1 through 10 ("Does") and therefore sues these Defendants by these fictitious names. Does likely consist of other transportation providers in the FlixBus network.  Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein.  Plaintiff will amend his Complaint to allege the Does' legal names and capacities as soon as such information becomes known.

## E.      All Defendants

28.      At all relevant times each and every Defendant was the agent, servant, employee, co-conspirator, and/or representative of each and every other Defendant

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

-7-

NY 78018802

and was, in engaging in the conduct complained of herein, acting within the scope of said agency, service, employment, conspiracy, and/or representation, and that each and every Defendant was acting within his/her actual or apparent authority with the full knowledge and consent of each other Defendant.

29.     Defendants are subject to the federal laws governing discrimination based on disability, including the ADA and the relevant implementing regulations.

30.     Defendants are also subject to California laws governing discrimination based on disability, including the Unruh Act and any relevant implementing regulations.

## V.     FLIXBUS'S BROKEN PROMISES TO WHEELCHAIR USERS

31.     In 2018, FlixBus launched operations in the United States with 180 connections across California, Arizona and Nevada.[2]  In 2019, FlixBus increased its number of connections and expanded its operations to New York and Texas.[3]

32.     On May 15, 2018, André Schwämmlein, Founder and CEO of FlixMobility GmbH, the Germany-based parent company of FlixBus, held a press conference in Los Angeles, California to mark the official launch of FlixBus's American operations.[4]  During the press conference, Mr. Schwämmlein spoke about how the Company has "one of the largest fleets in the world."  He described the buses' modern and premium amenities and how the company is driven by the "vision of *making mobility accessible for millions of people*."  As alleged below, FlixBus and the other Defendants have failed to live up to that vision for wheelchair users like Plaintiff and the Class Members.

[2] *The New Way to Travel: FlixBus Routes Begin in US May 31,* FLIXBUS (May 31, 2018), https://www.flixbus.com/company/press-room/press-releases/flixbus-starts-in-usa.

[3] *FlixBus USA Prepares for Expansion to Texas, New York in 2019.* , FLIXBUS (October 31, 2018), https://www.flixbus.com/company/press-room/press-releases/flixbus-prepares-us-expansion-to-texas-and-new-york.

[4] *FlixBus Press conference – Official Launch of FlixBus USA in Los Angeles – 05-15-2018 (video),* FLIXBUS, https://www.flixbus.com/company/press-room/press-releases/video-launch-flixbus-usa (last visited May 15, 2019).

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

-8-

33.     Pierre Gourdain, FlixBus's Managing Director, also spoke during the press conference.  He stated that he expects the United States to be the company's biggest market, and Los Angeles its second global headquarters.  Mr. Gourdain also stated, "We like regulations," adding that the company is "happy to abide by them."  As alleged below, however, Defendants have knowingly and repeatedly violated federal regulations designed to eliminate discrimination against travelers with disabilities.

34.     Both Mr. Schwämmlein and Mr. Gourdain touted the significant role that bus drivers on FlixBus trips have in the company's business.  Mr. Gourdain described them as FlixBus "ambassadors" and Mr. Schwämmlein said they are key to providing customers with a positive "personal experience."  As alleged herein, many of the drivers on Plaintiff's trips with Defendants are not properly trained to operate wheelchair lifts.  Additionally, the drivers have, at times, left Plaintiff feeling mistreated and belittled due to his disability.

35.     Mr. Schwämmlein stated during the press conference that he wants FlixBus to change the bus market in the United States.  He remarked, "We're not here to be another player in the market.  We want to reinvent the market."  But in pursuing this profit-driven agenda, FlixBus has disregarded its obligations under the ADA and Unruh Act prohibiting discrimination against persons with disabilities like Plaintiff and the Class Members.

36.     In sum, Plaintiff's experiences with Defendants indicates that FlixBus's promise to provide "green and smart mobility *for everyone*" is false.  Plaintiff has repeatedly been denied full and equal access to Defendants' transportation services due to his disability, indicating a clear pattern of discriminatory misconduct.  These encounters are detailed below.

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

NY 78018802

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

**VI.    DEFENDANTS' DISCRIMINATORY TREATMENT OF PLAINTIFF**

**A.    Summary of Mr. Serrano's Problematic Trips with Defendants**

37.    On nearly every occasion that Mr. Serrano traveled or attempted to travel with FlixBus, he complied with the guidance in Section 11 of its General Conditions of Carriage and informed FlixBus in advance that he uses a wheelchair for mobility.

38.    Mr. Serrano has repeatedly experienced difficulty in boarding and riding on vehicles traveling between Los Angeles and San Diego that he booked through FlixBus.  On information and belief, these buses were leased, owned or operated by TourCoach and/or USA Coach.  At least a dozen times the vehicles or personnel were not equipped to handle Mr. Serrano's wheelchair because the vehicles either did not have any wheelchair lift, had a broken or malfunctioning wheelchair lift, or had no personnel trained to properly operate a wheelchair lift.  These instances include, but are not limited to, the following trips on or about the following dates: [5]

- During the first week of August 2018, from San Diego to Los Angeles
- October 13, 2018, from Los Angeles to San Diego
- October 21, 2018, from Los Angeles to San Diego and back
- March 5, 2019, from San Diego to Los Angeles
- March 16, 2019, from Los Angeles to San Diego and back
- March 29, 2019, from San Diego to Los Angeles
- April 17, 2019, from Los Angeles to San Diego
- May 17, 2019, from Los Angeles to San Diego
- May 31, 2019, from Los Angeles to San Diego and back

---

[5] This is not intended to be an exhaustive list of incidents where Mr. Serrano experienced discrimination or other unlawful conduct while traveling or attempting to travel with Defendants.  Mr. Serrano intends to complete this list through discovery.

NY 78018802

39.     Although the vehicles used on these problematic trips were all owned, leased, operated, and/or utilized by one of the Defendants, Mr. Serrano does not know at this time which vehicle was owned, leased, operated, and/or utilized by which Defendant.  Similarly, all of the non-passenger/non-customer personnel involved with these problematic trips were the employees or contractors of Defendants, but Mr. Serrano does not know at this time the identities of the personnel or which of them were employed with, or contracted by, which of the Defendants.  Mr. Serrano intends to pursue this information in discovery.

40.     All of the vehicles on Mr. Serrano's problematic trips are classified as over-the-road buses ("OTRB") because they are characterized by an elevated passenger deck located over a baggage compartment.  42 U.S.C. § 12181(5).

**B.     Nonexistent, Broken, or Malfunctioning Wheelchair Lifts**

41.     Mr. Serrano has repeatedly experienced difficulty while traveling or attempting to travel with FlixBus and the other Defendants due to broken wheelchair lifts on their vehicles or the lack of a wheelchair lift altogether.

42.     One result of Defendants' failure to ensure that their vehicles are properly equipped with functional wheelchair lifts is that Mr. Serrano has had to rely on other passengers for help boarding and exiting the vehicle.  Such assistance has involved other passengers physically carrying Mr. Serrano.  For example, on a trip in 2018, Mr. Serrano attempted to board one of Defendants' vehicles on his return trip from San Diego to Los Angeles but was told by the driver that the wheelchair lift was not working.  The driver stated that Mr. Serrano could either wait for the next bus with an operational wheelchair lift (though it was unclear whether the next bus would have one) or be carried onto the bus by other passengers.  Having no other option, Mr. Serrano reluctantly allowed himself to be carried onto the bus because he urgently needed to return to Los Angeles.  In addition to the humiliation and embarrassment this caused Mr. Serrano, his reliance on helpful but untrained passengers greatly increased his risk of injury.

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA   90067-3086

-11-

NY 78018802

43.     Another result of Defendants' failure to ensure that their vehicles are properly equipped with functional wheelchair lifts is lengthy delays to Mr. Serrano's travel plans—delays that customers without disabilities would not have experienced. For example, on March 16 and March 29, 2019, Mr. Serrano was forced to wait several hours after his scheduled departure time because the originally scheduled buses did not have a working wheelchair lift.

44.     Furthermore, when Defendants cannot accommodate Mr. Serrano's wheelchair, he has been unfairly forced to incur additional travel costs, including purchasing more expensive tickets with Amtrak.  For instance, on May 31, 2019, Mr. Serrano had to purchase an Amtrak ticket to San Diego that cost double the FlixBus fare amount because Defendants' vehicle did not have any wheelchair lift at all and, therefore, he was unable to board.  The bus driver did not offer to assist or accommodate Mr. Serrano in any way.  This occurred despite Mr. Serrano calling FlixBus's customer service in advance and confirming there would be appropriate wheelchair access.

45.     Though there have been occasions where FlixBus offered Mr. Serrano reimbursement if he could not board another vehicle through FlixBus within a reasonable time, those offers have largely been unsatisfactory and insufficient to resolve Defendants' breaches of their legal duties.  For example, on the evening of March 5, 2019, Mr. Serrano was unable to board his scheduled Los Angeles-bound bus in San Diego due to an inoperable wheelchair lift.  The driver asked Mr. Serrano if he could get up from his wheelchair and walk.  When Mr. Serrano indicated that he could not, the driver said she could not let Mr. Serrano board the bus.  The driver also told Mr. Serrano that no one notified her there would be a passenger in a wheelchair, despite Mr. Serrano having informed FlixBus through its online booking system.  Prior to the bus departing, Mr. Serrano contacted FlixBus customer service about the situation.  The agent did not attempt to rectify Mr. Serrano being denied access to the bus, but instead presented him with two less helpful options:  take the

-12-

next bus, which was scheduled to arrive the following day, or take other transportation back to Los Angeles and receive reimbursement from FlixBus. ***The bus then departed without Mr. Serrano, leaving him stranded overnight while he awaited alternate transportation.*** Mr. Serrano eventually took Amtrak to Los Angeles the following morning.

**C.**   **Lack of Driver Training in Operation of Wheelchair Lift**

46.   Mr. Serrano has observed several bus drivers on these problematic trips fail to properly operate the wheelchair lift.

47.   On October 21, 2018, as Mr. Serrano attempted to board a vehicle from Los Angeles to San Diego, the driver struggled to operate the wheelchair lift and needed the help of another employee. This employee provided Mr. Serrano with his business card and instructed Mr. Serrano to call him at the number provided. Although the driver and other employee were eventually able to deploy the lift, once Mr. Serrano was on the bus, the lift malfunctioned and rendered the entire bus inoperable, forcing the other passengers to board a different vehicle. ***Mr. Serrano, however, was left stranded on the bus alone for hours before another employee later arrived to repair the lift.*** Even after the employee was able to retract the lift to its stored position, the driver still did not directly transport Mr. Serrano to San Diego. Instead, he drove Mr. Serrano to a bus yard, where a technician further inspected the lift to ensure that it would continue to operate. Though Mr. Serrano eventually reached San Diego, he arrived at his destination several hours after his fellow passengers.

48.   After the October 21 incident, Mr. Serrano called the telephone number provided by the employee. On the call, a FlixBus customer service representative intimidated Mr. Serrano, accused Mr. Serrano of causing problems for FlixBus, and told Mr. Serrano not to use the company's services again.

49.   Similarly, on a return trip from San Diego to Los Angeles on May 31, 2019, the driver initially struggled to operate the wheelchair lift and then failed to

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

-13-

NY 78018802

correctly fold down the seats.  Mr. Serrano had to request the assistance of other passengers to fold the seats so he could maneuver his wheelchair on the bus.  The driver also failed to secure the front two wheels of Mr. Serrano's wheelchair, resulting in a dangerous travel experience in which he was fortunate to not be injured.

**D.   FlixBus Is Aware of These Problems.**

50.     Mr. Serrano has submitted multiple complaints regarding the incidents described above to FlixBus's customer service through its website and by telephone. On April 29, 2019, Daniel Hirsch, Senior Manager of Customer Service at FlixBus, emailed Mr. Serrano and admitted that the company has not been following proper wheelchair lift procedures.  Specifically, Mr. Hirsch admitted that FlixBus has not been following United States Department of Transportation ("DOT") regulations for pre-trip inspections "as they pertain to testing the safe operation of the lift prior to beginning their runs."  Mr. Hirsch further stated that he forwarded Mr. Serrano's complaint to FlixBus' Regional Operations Manager.  FlixBus provided no further response to Mr. Serrano and subsequent problematic trips taken by Mr. Serrano demonstrated that these concerns were not addressed.

51.     Prior to filing this lawsuit, Plaintiff provided FlixBus with ample opportunity to resolve this matter amicably.  Regrettably, those efforts were unsuccessful, and Plaintiff was left with no choice but to seek the Court's assistance.

**VII.   CLASS DEFINITIONS AND ALLEGATIONS**

52.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs of this Complaint, as if fully set forth herein.

53.     Plaintiff brings this action on behalf of himself and others similarly situated pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.  As set forth below, this action may be maintained as a class action under Rule 23(b)(2) because Defendants' violations of the ADA and Unruh Act are applicable to all members of the Classes (defined below).  An injunction requiring

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

-14-

compliance with the ADA and Unruh Act, including all applicable guidelines and regulations, is therefore appropriate.

**A.**   **Class Definitions**

54.    Plaintiff seeks to represent the following national injunctive relief classes under Rule 23(b)(2) (collectively, the "National Classes"):

- **FlixBus National Class:**  All individuals in the United States who require use of a wheelchair (or other mobility device) as necessary for their mobility and daily living and are located in an area where FlixBus offers, arranges, or provides transportation services.

- **TourCoach National Class:**  All individuals in the United States who require use of a wheelchair (or other mobility device) as necessary for their mobility and daily living and are located in an area where TourCoach offers, arranges, or provides transportation services.

- **USA Coach National Class:**  All individuals in the United States who require use of a wheelchair (or other mobility device) as necessary for their mobility and daily living and are located in an area where USA Coach offers, arranges, or provides transportation services.

55.    Class Members of the National Classes are referred to herein, collectively, as the "National Class Members."

56.    Plaintiff also seeks to represent the following California classes (collectively, the "California Classes") (together with the National Classes, the "Classes"):

- **FlixBus California Class:**  All individuals in California who require use of a wheelchair (or other mobility device) as necessary for their mobility and daily living and are located in an area where FlixBus offers, arranges, or provides transportation services.

- **TourCoach California Class:**  All individuals in California who require use of a wheelchair (or other mobility device) as necessary for their mobility

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

-15-

NY 78018802

and daily living and are located in an area where TourCoach offers, arranges, or provides transportation services.

- **USA Coach California Class:**  All individuals in California who require use of a wheelchair (or other mobility device) as necessary for their mobility and daily living and are located in an area where USA Coach offers, arranges, or provides transportation services.

57.   Class Members of the California Classes are referred to herein, collectively, as the "California Class Members."

58.   Plaintiff reserves the right to amend or further define these Classes, or this Complaint, through additional pleadings, evidentiary hearings, a class certification motion and/or hearings, and order of this Court.  These Classes may be further sub-classed if necessary, and Plaintiff reserves the right to do so.

**B.     Numerosity—Fed. R. Civ. P. 23(a)(1)**

59.   Plaintiff does not know the exact size of the Classes nor the identities of the Class Members since such information is in the exclusive control of Defendants. It is generally accepted that there are approximately 2.7 million people in the United States who have disabilities and use wheelchairs or a similar device for mobility.[6] Plaintiff believes that due to the millions of customers who, according to FlixBus, travel or attempt to travel using FlixBus' transportation service each year in the United States, there would be thousands who travel or attempt to travel on Defendants' vehicles through FlixBus.  Together with the potentially hundreds or thousands of persons who use wheelchairs who may desire to use the FlixBus transportation service each month in the United States, the number of Class Members in each of the Classes is sufficiently numerous and dispersed throughout the United States.  Therefore, it is impracticable to bring or join all Class Members before the

---

[6] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4397418/ (last accessed 4/17/20)

-16-

Court.  The names and addresses of certain Class Members can be obtained from Defendants' records.

## C.   Existence and Predominance of Common Questions of Fact and Law— Fed. R. Civ. P. 23(a)(2)

60.   Numerous questions of fact and law are common to the Classes, including but not limited to the following:

a.   Whether Plaintiff and the Class Members have been denied the right to full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages, or accommodations in violation of the ADA and Unruh Act.

b.   Whether Defendants are required by the ADA and Unruh Act to maintain operational wheelchair lifts on vehicles used in their transportation services;

c.   Whether the lack of a wheelchair lift on the vehicles used in Defendants' transportation services violates the ADA and Unruh Act;

d.   Whether the broken or malfunctioning wheelchair lifts on the vehicles used in Defendants' transportation services violate the ADA and Unruh Act;

e.   Whether Defendants are required by the ADA and Unruh Act to train personnel to properly operate wheelchair lifts on vehicles used in their transportation services;

f.   Whether Defendants properly trained their personnel to operate wheelchair lifts on vehicles used in their transportation services, and whether that training, or the lack thereof, violated the ADA and Unruh Act;

g.   Whether Defendants had policies and procedures in place sufficient to ensure compliance with the ADA and Unruh Act;

h.   Whether Defendants otherwise acted properly to ensure sufficient compliance with the ADA and Unruh Act;

i.   Whether Defendants are individually and/or jointly liable for the unlawful conduct alleged herein due to their individual and/or joint ownership,

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

-17-

NY 78018802

operation, maintenance, development, control, and/or leasing of the property that is the subject of this litigation;

j.      Defendants' intent in committing the wrongful acts alleged herein;

k.      Whether Plaintiff and Class Members are entitled to declaratory, injunctive, and/or other equitable relief; and

l.      Whether Plaintiff and Class Members are entitled to an award of attorneys' fees and costs incurred in bringing this action.

**D.     Typicality—Fed. R. Civ. P. 23(a)(3)**

61.     Plaintiff's claims are typical of the claims of Class Members.  Plaintiff is typical of the members of the Classes because he uses a wheelchair for mobility, is located in at least one of the areas where Defendants offer or provide transportation services, and during his travels or attempted travels with Defendants was denied access substantially equal to nondisabled passengers in the manner described above. Defendants' unlawful practices, as alleged above, were employed similarly to each Class Member.  Defendants engaged in a common course of conduct involving similar or identical plans, policies, procedures, intent, design, statutory violations, and schemes—or systemic lack thereof.  The injuries sustained by Plaintiff and the Class Members arise from a common nucleus of operative facts involving Defendants' misconduct.

**E.     Adequacy—Fed. R. Civ. P. 23(a)(4)**

62.     Plaintiff will fairly and adequately represent and protect the interests of the Classes and does not have interests that are antagonistic to or in conflict with those he seeks to represent.  Furthermore, Plaintiff has retained counsel with considerable experience in class actions, disability rights, and other forms of complex litigation.

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

**F.      Inconsistent and/or Dispositive Adjudications—Fed. R. Civ. P. 23(b)(1)**

63.      Prosecution of separate actions by individual Class Members will create the risk of adjudications with respect to individual Class Members, which would, as a practical matter, establish incompatible standards of conduct for Defendants and be dispositive of the interests of Class Members who are not parties to those adjudications, and would or could substantially impair or impede their ability to protect their interests.

**G.      Injunctive and Declaratory Relief Is Appropriate—Fed. R. Civ. P. 23(b)(2)**

64.      Defendants have acted, failed, or refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or declaratory relief appropriate with respect to the Injunctive Class as a whole.

## FIRST CLAIM FOR RELIEF

**Violation of Title III of the Americans with Disabilities Act by Defendants (42 U.S.C. §§ 12101 et seq.)**

65.      Plaintiff realleges and incorporates by reference each of the preceding paragraphs of this Complaint, as if fully set forth herein.

66.      Defendants are private entities subject to Title III of the ADA that own, lease (or lease to), or operate public accommodations and are primarily engaged in the business of transporting people.  42 U.S.C. §§ 12181(6), 12182, 12184.

67.      Title III of the ADA provides:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

68.      Likewise, 42 U.S.C. § 12184(a) prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of specified

NY 78018802

public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce."

69.     The Attorney General is responsible for implementing the foregoing statute by promulgating regulations.  42 U.S.C. § 12186(a)(2) and (b).

70.     Entities that provide public accommodations or public transportation services may not impose "eligibility criteria" that tend to screen out people with disabilities, 42 U.S.C. §§ 12182(b)(2)(A)(i), 12184(b)(1), 49 C.F.R. § 37.5(f); and may not purchase or lease an OTRB that does not comply with the U.S. Department of Transportation ("DOT") regulations issued under 42 U.S.C. §§ 12182(b)(2)(D), 12184(b)(4)(A) and 12186(a)(2).

71.     Defendants' conduct, as alleged above, violates Title III of the ADA and the federal regulations promulgated pursuant thereto, including but not limited to DOT regulations issued under 42 U.S.C. §§ 12182(b)(2)(D), 12184(b)(4)(A) and 12186(a)(2).  See generally 49 C.F.R., part 37.

72.     Defendants have violated Title III of the ADA by, among other things, failing to operate their services on a nondiscriminatory basis; failing to ensure that Plaintiffs and the National Class Members who are disabled have full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations provided by Defendants; failing to modify practices, policies, and procedures to ensure that personnel and drivers of FlixBus vehicles are properly trained and do not deny access to individuals on the basis of disability; and failing to train their employees to operate their equipment to provide services to those with physical disabilities.  42 U.S.C. §§ 12182(b)(2)(A)(ii), 12184(b)(2)(A); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.302(a).

73.     As large operators of fixed route services, Defendants further violated Title III of the ADA by failing to ensure that one hundred percent of the buses in their fleets are "readily accessible to and usable by individuals with disabilities," particularly those who use wheelchairs or similar mobility aids.  49 C.F.R.

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

NY 78018802

§ 37.185(b). However, even if Defendants are considered small operators of fixed route OTRBs, Defendants have otherwise violated the ADA by failing to provide accessible buses given proper notice and as otherwise set forth herein. 49 C.F.R. § 37.193(a)(1).

74. By Defendants administering their transportation services in a manner that results in individuals with disabilities being denied access to these services on the basis of disability, Defendants are unlawfully denying Plaintiff and National Class Members full and equal access to the services, privileges, advantages, and accommodations of FlixBus. 42 U.S.C. § 12182(b)(1)(D); 28 C.F.R. § 36.204.

75. Defendants have also failed to "maintain in operative condition those features of facilities and vehicles that are required to make the vehicles and facilities readily accessible to and usable by individuals with disabilities," such as wheelchair lifts, and violated the ADA by requiring or requesting that Plaintiff and National Class Members reschedule their trips, or travel at times other than the one requested, "in order to receive transportation as required" by the regulations. 49 C.F.R. §§ 37.161, 37.207(c).

76. Defendants have further failed to "establish a system of regular and frequent maintenance checks of lifts sufficient to determine if they are operative," to "ensure that vehicle operators report [], by the most immediate means available, any failure of a lift to operate in service," and to take any "vehicle [with a non-operative lift] out of service before the beginning of the vehicle's next trip and ensure that the lift is repaired before the vehicle returns to service. 49 C.F.R. § 37.203.

77. Defendants have further violated the ADA by failing to ensure that their personnel are trained to "proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities." 49 C.F.R. § 37.173.

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

-21-

NY 78018802

78.     By engaging in the actions and omissions described herein, Defendants have violated the foregoing statutory and regulatory provisions.  Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and/or incorporated therein, Plaintiff prays for judgment on behalf of himself and the National Class Members as set forth below.

79.     Defendants' violations of the ADA as alleged herein entitle Plaintiff and the National Class Members to declaratory and injunctive relief to compel Defendants to comply with their obligations under this law.  Plaintiff and the National Class Members have suffered and continue to suffer injuries for which they have no adequate remedy at law.  The injuries of Plaintiff and the National Class Members are traceable to Defendants' discriminatory conduct, policies, or lack of policies alleged herein and will be redressed by the relief requested.

80.     Defendants' conduct constitutes ongoing and continuous violations of the ADA.  Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and the National Class Members will continue to suffer irreparable harm.  Consequently, Plaintiff and National Class Members are entitled to injunctive relief.  42 U.S.C. § 12188.  Defendants' violations also warrant Plaintiff to recover reasonable attorneys' fees and costs incurred in bringing this action.  Id. § 12205.

## SECOND CLAIM FOR RELIEF

### Violation of the California Unruh Civil Rights Act by Defendants

### (Cal. Civ. Code §§ 51 et seq.)

81.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs of this Complaint, as if fully set forth herein.

82.     California's Unruh Act prohibits discrimination against individuals with disabilities.  California Civil Code § 51(b) provides, in pertinent part: "All persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages,

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

-22-

NY 78018802

facilities, privileges, or services in all business establishments of every kind whatsoever."

83.    Each violation of the ADA also constitutes an independent violation of the Unruh Act.  Cal. Civ. Code § 51(f).  Therefore, each of Defendants' ADA violations against Plaintiff and the California Class Members alleged herein constitute independent violations of the Unruh Act for those trips departing from, or arriving to, California.

84.    In committing the acts herein alleged, Defendants have violated the Unruh Act by discriminating against Plaintiff and the California Class Members on the basis of their disabilities and use of a wheelchair.

85.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and other harm.

86.    Plaintiff and the California Class Members are entitled to injunctive relief to prevent Defendants from further violating the Unruh Act.  Cal. Civ. Code § 52(c)(3).  Plaintiff is also entitled to recover up to treble his actual damages according to proof, as well as to reasonable attorneys' fees and costs incurred in bringing this action.  Cal. Civ. Code § 52(a).

## THIRD CLAIM FOR RELIEF

### Violation of the California Unfair Competition Law by Defendants

### (Cal. Bus. & Prof. Code §§ 17200 et seq.)

87.    Plaintiff realleges and incorporates by reference each of the preceding paragraphs of this Complaint, as if fully set forth herein.

88.    The acts of Defendants that are alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of California Business and Professions Code §§ 17200 et seq.

89.    As alleged above, Defendants falsely claimed to offer full and equal access to its transportation services for everyone, including people with disabilities who use wheelchairs.  Defendants' conduct thus constitutes a fraudulent business

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

-23-

practice because it is likely to mislead or deceive the general public; and indeed, as the experiences of Plaintiff and the Class Members demonstrate, it already has.

90.     Defendants' conduct constitutes an unlawful business practice in violation of California Business and Professions Code §§ 17200 et seq. because it violates the ADA and Unruh Civil Rights Act.  Defendants' false advertising further constitutes an unlawful business practice because it violates California Business and Professions Code §§ 17500 et seq., which prohibits these types of false or misleading public statements.

91.     Additionally, Defendants' conduct that discriminates on the basis of disability constitutes an unfair business practice in violation of California Business and Professions Code §§ 17200 et seq. because it is immoral, unethical, oppressive, unscrupulous, and substantially injurious to customers with disabilities.  Defendants' conduct offends established public policies for equal and fair treatment of persons with disabilities.

92.     Defendants' conduct constitutes an unfair business practice because the impact of Defendants' false statements on Plaintiff and the Class Members far outweigh whatever reasons, justifications, or motivations Defendants had or could have had in making such statements.  Defendants' conduct also offends established public policies prohibiting false and misleading public statements.  Defendants' conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers such as Plaintiff and the Class Members.

93.     Plaintiff has no adequate remedy at law in that the continuing nature of Defendants' unfair competition will result in ongoing irreparable harm to Plaintiff and the Class Members.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class Members have been injured in fact, and such harm will continue unless Defendants' acts are enjoined.

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class Members, prays for relief on the Complaint as follows:

1.      An order certifying the National and California classes, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure;

2.      A declaration that Defendants' conduct as alleged herein has violated, and continues to violate, Title III of the ADA, 42 U.S.C. §§ 12181 et seq. (and applicable regulations) and Cal. Civ. Code §§ 51 et seq.;

3.      Preliminary and permanent orders and judgment enjoining Defendants, their agents, employees, successors, and all other persons in active concert or participation with Defendants from violating Title III of the ADA, 42 U.S.C. §§ 12181 et seq. and its implementing regulations, and Cal. Civ. Code §§ 51 et seq.; and requiring Defendants to undertake remedial measures to mitigate the effects of Defendants' past and ongoing failure to provide full and equal access to persons with disabilities.  At a minimum, Plaintiff and the Class Members request that Defendants be enjoined to take the following actions:

a.      Cease all action against individuals with mobility impairments that have the effect of discrimination on the basis of their disability;

b.      Ensure that only accessible OTRBs are used in Defendants' transportation services, or otherwise purchase (or require the purchasing of) accessible OTRBs that comply with federal and state disability rights laws;

c.      Ensure that any new vehicles purchased for Defendants' transportation services are accessible and comply with federal and state disability rights laws;

d.      Perform immediate inspections of all OTRBs used in Defendants' transportation services to ensure that the vehicles' accessible features, including wheelchair lifts, are in operative condition;

-25-

NY 78018802

e.      Immediately remove from service any OTRBs owned, operated, and/or utilized by Defendants that have accessibility features that are not in operative condition;

f.      Establish a system of regular and frequent mandatory maintenance checks of Defendants' OTRBs to ensure that:

i.      accessibility features are in operative condition; and

ii.      personnel are promptly informed of vehicles that have non-operative accessibility features;

g.      Undertake prompt measures to eliminate physical-based, policy-based, or practice-based barriers to make Defendants accessible to individuals with disabilities in compliance with federal and state disability rights laws, including the development of written policies and other guidance documents;

h.      Properly train all personnel to provide access to Defendants' services to individuals with disabilities and to treat such individuals with courtesy and respect in accordance with federal and state disability rights laws;

i.      Maintain records of all requests for, and the provision of, wheelchair accessible vehicles;

j.      Ensure that Defendants' drivers are informed in advance of each trip when they will be transporting passengers with disabilities, and in such instances, ensure that drivers conduct adequate pre-trip inspections of vehicles for compliance with all relevant federal and state laws and regulations;

k.      Submit to inspection by an independent monitor for a specified term, to ensure full and adequate implementation of these remedial measures;

l.      Correct their advertising that falsely claims to offer their services on an equal basis with customers without disabilities (until such time as monitoring concludes that the statement is reasonably true); and

NY 78018802

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

1    m.    Remain under this Court's jurisdiction until Defendants fully

2  comply with the orders of this Court, and until there are reasonable assurances that

3  Defendants will continue to comply in the future, absent continuing jurisdiction.

4    4.    Award Plaintiff up to treble his actual damages in an amount to be

5  determined by proof, including but not limited to damages under California Civil

6  Code section 52(a) and as otherwise provided by law;

7    5.    Award any other damages as may be allowed under the laws set forth

8  above;

9    6.    An order awarding Plaintiff's attorneys' fees and costs as provided by

10  law; and

11    7.    Such other and further relief as the Court may deem just and proper.

Dated: May 14, 2020                     Respectfully submitted,

                                        STROOCK & STROOCK & LAVAN LLP
                                        STEPHEN J. NEWMAN
                                        DUSTIN A. LINDEN
                                        GAGANJYOT K. SANDHU

                                        DISABILITY RIGHTS LEGAL CENTER
                                        CHRISTOPHER H. KNAUF
                                        ALEXANDRA M. ROBERTSON
                                        BRENDAN HAMME

                                        By:  _/s/ Stephen J. Newman_____
                                              Stephen J. Newman

                                        Attorneys for Plaintiff
                                          FRANCISCO SERRANO, on behalf of
                                          himself and all others similarly situated

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

-27-

NY 78018802

# **DEMAND FOR JURY TRIAL**

Plaintiff Francisco Serrano and the Class Members demand a jury trial in this action for all claims so triable.

Dated: May 14, 2020                    Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
STEPHEN J. NEWMAN
DUSTIN A. LINDEN
GAGANJYOT K. SANDHU

DISABILITY RIGHTS LEGAL CENTER
CHRISTOPHER H. KNAUF
ALEXANDRA M. ROBERTSON
BRENDAN HAMME

By:   */s/ Stephen J. Newman*
          Stephen J. Newman

Attorneys for Plaintiff
   FRANCISCO SERRANO, on behalf of
   himself and all others similarly situated

COMPLAINT
Case No. 2:20-cv-04355

NY 78018802